**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| LINCOLN LANE ADDLEMAN, JR., and MELVIN LYLE McCLINTOCK, <br><br>Plaintiffs, <br><br>v. <br><br>KING COUNTY, DAVID REICHERT, ANDREA ALEXANDER, JOSEPH LEHMAN, VICTORIA MUCCILLI, DONTA HARPER, and SALOME LOOMIS, <br><br>Defendants. | CASE NO. CV05-0709-JCC <br><br>ORDER |

This matter comes before the Court on the Motions for Summary Judgment of Defendants King County, David Reichert, and Andrea Alexander ("King County Defendants") (Dkt. No. 5) and Defendants Joseph Lehman, Victoria Muccilli, Donta Harper, and Salome Loomis ("Department of Corrections Defendants") (Dkt. No. 108), and Plaintiffs' Motion to Continue (Dkt. No. 115). Having reviewed these motions, as well as the parties' oppositions and replies, and the declarations and affidavits filed in support of each, the Court hereby finds and rules as follows.

//

//

ORDER — 1

## I.  FACTS

On April 30, 2003, Department of Corrections ("DOC") Community Corrections Officers ("CCOs") executed a warrantless search of Plaintiff McClintock's residence and computer, acting on a neighbor's report that McClintock, a paroled sex offender, had contact with the neighbor's children. (Dkt. No. 1 at 9.) McClintock was not home when the CCOs got to his residence, but arrived later in a vehicle driven by an acquaintance, Judy Bass. (Dkt. No. 1 at 9; Dkt. No. 102-3, Exh. POM-001 at 1; Dkt. No. 108 at 4.) Bass and McClintock had been taking a computer to be repaired, and the computer was in the back of the vehicle. *Id.* The parties dispute who brought the computer into the house (Dkt. No. 1 at 10; Dkt. No. 108 at 5), but agree that it was brought into the house and searched. *Id.* The CCOs, using forensic software, found pornographic images on the hard drive. Plaintiffs do not dispute this, but claim the CCO search found only deleted images from a prior user. (Dkt. No. 102-3, Exh. POM-001 at 3.) The CCOs arrested McClintock because possessing pornography and contact with children were both violations of his parole. (Dkt. No. 108 at 5.) The CCOs also seized various magazines, books, papers, drawings, floppy discs, DVDs, and the computer, for further investigation. (Dkt. No. 108-4 at 32-34.)

After seizing the computer, one of the CCOs contacted the King County Sheriff's Department to see if King County could help with further searches of the computer, which the CCOs suspected might also contain child pornography. (Dkt. No. 105 at 2.) King County Detective Andrea Alexander told the CCO that King County could search the computer if it contained files that were criminal under Washington law. *Id.* A CCO brought the computer to Alexander's office, but after talking to the CCO on the telephone, Alexander determined that King County could not search the computer because the only images of children the CCOs had found were animations, not photographs, and the only pornographic images the CCOs found were of

adults. *Id.* According to Alexander, she kept the computer at her desk, did not search it, and left messages for McClintock to pick up the computer. (Dkt. No. 105 at 2-3.) The plaintiffs allege that King County searched the computer, erased the hard drive, and did not contact McClintock until months later. (Dkt. No. 1 at 2-3.)

Plaintiffs claim that they inquired about the computer prior to September 2003, but did not receive a response until McClintock sent public records requests to the DOC and the Sheriff's Office in late September, 2003. (Dkt. No. 1 at 14.) The Sheriff's Office wrote McClintock back on October 6, 2003 and told him he could pick up the computer from Alexander. *Id.* McClintock picked up the computer on November 19, 2003. *Id.*

Plaintiffs Addleman and McClintock have filed a 42 U.S.C. § 1983 action claiming that the King County Defendants and the DOC Defendants violated their rights under the First, Fourth, Fifth, and Fourteenth Amendments. Plaintiffs also claim that Defendants violated the Hobbs Act, 18 U.S.C. § 1951, a federal robbery and extortion statute. Plaintiff Addleman is currently incarcerated in Washington state and claims to own the seized computer and various documents. McClintock is not currently incarcerated. In their Complaint (Dkt. No. 1), Plaintiffs claim that when McClintock picked up the computer, the hard drive had been completely "wiped," either by the CCO search, by a King County search, or as part of a King County policy.[1] Plaintiffs also claim that the King County Defendants held the computer and hid it from them. As a result, Plaintiffs contend, the assets of Plantiff Addleman's business were depleted, and they missed a deadline, lost the opportunity to publish a book worth over $6 million, and lost a contract worth $437,000 for the sale of Addleman's drawings, which were on the computer. Plaintiffs additionally claim that the DOC policy requiring DOC Secretary approval for prisoners' contracts and denying prisoners

---

[1] Addleman contradictorily claims the drive may have been erased by McClintock himself. (Dkt. No. 122.)

ORDER — 3

access to business licenses and employer identification numbers violates Addleman's First Amendment rights, that DOC policy allowing prisoners with outside attorneys to conduct business via counsel violates the Commerce Clause, and that McClintock is entitled to injunctive relief removing him from a DOC offender database. In what the Court construes as an amendment or addition to the complaint (Dkt. No. 2), Addleman also claims that DOC violated his rights by seizing manuscripts and legal papers from his cell.

## II.     STANDARD OF REVIEW

*A.     Special Considerations Applicable to the Claims of Pro Se Plaintiffs*

Federal courts construe *pro se* plaintiffs' claims liberally, however "inartful." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). This principle has limits, however. Courts may not supply essential elements of the claim that were not originally pled, *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), nor may courts "undertake to infer . . . one cause of action when a complaint clearly states a claim under a different cause of action." *Bogovich v. Sandoval*, 189 F.3d 999, 1001 (9th Cir. 1999). The Court will be guided by this principle here.

*B.     Standard for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50

(1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find for the non-moving party.  *Anderson*, 477 U.S. at 248.  The moving party bears the burden of showing that there is no evidence which supports an element essential to the non-movant's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  However, a mere scintilla of evidence for the non-movant's claim is not sufficient to defeat summary judgment.  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Instead, the party opposing summary judgment must come forward with significant probative evidence.  *See Anderson*, 477 U.S. at 249-50.  The party opposing summary judgment may not rest on conclusory allegations or mere assertions, but must set forth specific facts showing that there is a genuine issue for trial.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988); *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).  Summary judgment is proper where the record taken as a whole could not lead a rational jury to find for the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**III.    ANALYSIS**

A.    *Plaintiffs' Hobbs Act Claims*

Plaintiffs claim that by seizing the computer, Defendants committed extortion, interfered with Plaintiffs' interstate contracts, and depleted the resources of Plaintiffs' business, thus violating the Hobbs Act, 18 U.S.C. § 1951.  (Dkt. No. 1.)  Plaintiffs may only sue for violation of a statute if the statute grants a private right of civil action, express or implied.  The Hobbs Act is a criminal statute that does not expressly create a private right of action.  18 U.S.C. § 1951.

In evaluating whether a statute creates a private right of action, the Court's focus is on whether Congress intended to create such a right.  *Merrill Lynch, Pierce, Fenner & Smith v.*

*Curran*, 456 U.S. 353, 377-378 (1982).  Where a "statute by its terms grants no private rights to any identifiable class," *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576 (1979), it is not proper for the Court to imply such a right.  Additionally, it is rarely appropriate for a court to find an implied civil cause of action in "a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone." *Cort v. Ash*, 422 U.S. 66, 80 (1975).  The Hobbs Act is just such a bare criminal statute, containing no language suggesting it can provide a civil cause of action.  Moreover, no court that has considered the issue has determined that the legislative history of the statute indicates that Congress intended to create a private cause of action.  *See Wisdom v. First Midwest Bank*, 167 F.3d 402, 408-409 (8th Cir. 1999) (citing cases).  The Court is persuaded by the Eighth Circuit's analysis, and accordingly, Plaintiffs' claims under the Hobbs Act must be dismissed.

*B.    Plaintiffs' 42 U.S.C. § 1983 Claims*

Plaintiffs bring multiple claims under 42 U.S.C. § 1983, alleging that Defendants violated their First, Fourth, Fifth, and Fourteenth Amendment rights, as well as the Commerce Clause of the United States Constitution.  Section 1983 creates a cause of action against any person who, under color of state law, deprives another of rights or privileges guaranteed by the Constitution or federal law.  42 U.S.C. § 1983.  The Court will consider each of these allegations in turn, beginning each discussion with a description of the conduct alleged to have violated § 1983.

> 1.    DOC violated Addleman's Fourth Amendment rights by seizing manuscripts and legal papers from his cell. (Dkt. No. 2 at 6.)

Setting aside for the moment that the factual allegations concerning this claim are fatally vague, it must be dismissed as a matter of law.  Plaintiffs do not allege that any of the CCOs named in the Complaint seized papers from his cell. DOC Secretary Joseph Lehman is named as a defendant, but Plaintiffs sue him only in his official capacity.  A state official in his or her official

capacity is not a "person" for purposes of liability under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, this claim must be dismissed because Plaintiffs do not name a proper defendant.

> 2. By refusing to let prisoners execute contracts and denying access to business registration forms, DOC Policy 200.000 violates Addleman's First Amendment or Commerce Clause rights. (Dkt. No. 1 at 4, Dkt. No. 2 at 1.)

Like the above claim, this claim fails for lack of a proper defendant because DOC Secretary Joseph Lehman is sued only in his official capacity. *Will*, 491 U.S. at 71.

Even if Plaintiffs had named a proper defendant, however, this claim would still fail because prisoners have no right to conduct a business while incarcerated. *See King v. Fed. Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005); *French v. Butterworth*, 614 F.2d 23, 24 (1st Cir. 1980); *Stroud v. Swope*, 187 F.2d 850, 851 (9th Cir. 1951). Plaintiffs claim that because the desired business would merely be owned by Addleman, but operated by contract employees, this does not amount to Addleman running a business from prison. (Dkt. No. 2 at 1.) The Court fails to see a relevant distinction between owning a business and supervising contract employees, and running a business.

> 3. DOC's uneven enforcement of DOC 200.000 violates the Commerce Clause or violates Plaintiffs' due process rights. (Dkt. No. 1 at 4, Dkt. No. 2 at 1.)

As is true of the two prior claims, this claim fails for lack of a proper defendant because DOC Secretary Joseph Lehman is sued only in his official capacity. *Will*, 491 U.S. at 71.

However, like the preceding claim, this claim would fail even if Plaintiffs properly named a defendant. Plaintiffs contend that DOC's enforcement of DOC 200.000 is "arbitrary and capricious" (Dkt. No. 2 at 1). In support of that assertion, Plaintiffs claim that DOC allows other prisoners, particularly prisoners with outside counsel, to conduct business. (Dkt. No. 2 at 1-2.)

ORDER — 7

Plaintiffs claim that this uneven enforcement of DOC 200.000 violates the Commerce Clause. (Dkt. No. 1 at 4.)

"The purpose of the Commerce Clause is allocation of power between state and national governments, not protection of individuals from abuse of government authority. The Commerce Clause creates no individual rights." *Int'l Org. of Masters, Mates & Pilots v. Andrews*, 831 F.2d 843, 847 (9th Cir. 1987). Accordingly, Plaintiffs' allegations cannot give rise to a cause of action pursuant to § 1983 for violation of the Commerce Clause.

Plaintiffs do not clearly claim that uneven enforcement of DOC 200.000 is a due process violation, but in calling the enforcement "arbitrary and capricious" Plaintiffs seem to be arguing for a due process violation. This claim would similarly fail. A prison can violate the due process rights of its inmates by granting privileges to some and refusing them to other similarly situated inmates. *See Baumann v. Ariz. Dep't of Corrs.*, 754 F.2d 841, 845 (9th Cir. 1985). However, such a violation can only arise when the privilege is a constitutionally protected liberty interest. Such a liberty interest can only arise where the policy confers a privilege that is not subject to the discretion of prison officials. *Id.* at 844 (interpreting *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1(1979)). Because DOC 200.000 retains discretion for the Secretary, it does not create a constitutionally protected liberty interest to which Plaintiffs are entitled.

    4.    McClintock is entitled to injunctive relief removing him from Offender-Based Tracking System. (Dkt. No. 1 at 17.)

This claim appears in the "Relief" section of the Complaint and nowhere else. Plaintiffs ask that McClintock be removed "from OBTS [Offender-Based Tracking System] computer as an 'offender' two-and-a-half years after his maximum expired." (Dkt. No. 1 at 17.) Plaintiffs appear to be claiming that it is a civil rights violation for McClintock to be tracked in OBTS, which is used to track sex offenders. The Ninth Circuit Court of Appeals has upheld the constitutionality of

ORDER — 8

Washington's requirement that sex offenders register with law enforcement after the completion of their sentences. *Russell v. Gregoire*, 124 F.3d 1079 (9th Cir. 1997), *cert. denied*, 523 U.S. 1007 (1998). Requiring McClintock to register and tracking that registration in OBTS does not violate any constitutionally protected right.

> 5. DOC CCOs violated Plaintiffs' Fourth Amendment rights by illegally searching McClintock's residence and seizing the papers and the computer. (Dkt. No. 1 at 4-5.)

Plaintiffs' Fourth Amendment claims fail because Plaintiffs fail to produce any evidence that the CCOs' search and seizure violated the Fourth Amendment. Plaintiffs argue that the CCO search was invalid because it was undertaken not to supervise McClintock's parole, but to investigate for another unspecified crime. (Dkt. 1 at 10.) Plaintiffs also make much of the fact that the search took place without a warrant.

Washington law does not require parole officers to have a warrant before searching a parolee. *See* Wash. Rev. Code § 9.94A.631. Washington law requires only that parole officers have "a well-founded suspicion that a violation has occurred" before searching or seizing a parolee's residence, personal property, or person. *State v. Massey*, 913 P.2d 424, 425 (Wash. Ct. App. 1996). The Ninth Circuit has upheld Washington's law as comporting with the Fourth Amendment's reasonableness standard. *See United States v. Conway*, 122 F.3d 841 (9th Cir. 1997). Additionally, when McClintock was paroled, he signed a Fourth Amendment waiver consenting to search at any time. (Dkt. No. 1, Exh. ZTE-002.) DOC officers had a well-founded suspicion that McClintock had violated parole based on the neighbor's report that McClintock had contact with her children. (Dkt. No. 108-4 at 3.) Plaintiffs introduce no scintilla of evidence to support their assertion that the search was improperly motivated or to call into question its reasonableness, so summary judgment must be granted for Defendants on this claim.

ORDER — 9

Plaintiffs also allege that the CCO search may have been conducted to retaliate against McClintock for refusing to pay for a urinalysis and a polygraph. (Dkt. No. 1 at 10.) A search conducted in retaliation for the exercise of a constitutional right violates the Fourth Amendment. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). However, to make out a § 1983 claim for retaliation, a plaintiff must first establish that the conduct that prompted the alleged retaliation was itself constitutionally protected. *Id.*; *see also Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). Plaintiffs fail to introduce evidence, or even allege, that McClintock was exercising a constitutional right in refusing to pay for a urinalysis or polygraph. Therefore, Plaintiffs fail to state a claim for retaliatory search.

Plaintiffs finally contend that CCOs should not have searched or seized the computer because it did not belong to McClintock, and therefore his diminished Fourth Amendment rights and his consent to search do not apply to the computer. (Dkt. No. 122 at 1-3.) In various documents, Plaintiffs claim the computer belonged to Addleman (Dkt. No. 3 at 2), to Addleman's unregistered business Zaxy Taxy Enterprises ("ZTE") (Dkt. No. 1 at 9-11), or to McClintock's acquaintance Judy Bass (Dkt. No. 122 at 3).

While the ownership of the computer is clearly in dispute, it does not raise a genuine issue material fact sufficient to defeat summary judgment. No matter who owned the computer, its search did not violate the Fourth Amendment. First, the computer cannot have belonged to ZTE because ZTE does not exist as a business entity. (Dkt. No. 108-2.) Second, Plaintiffs cannot assert a third party's Fourth Amendment right, *Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976). Bass is not a party to this suit, so Plaintiffs' Fourth Amendment claim fails if the computer belonged to Bass. Lastly, even if the computer belonged to Addleman, it was nonetheless in the possession of either Bass or McClintock when it was seized. If it was in Bass's possession, the claim fails because she

is not a party to this suit. If it was in McClintock's possession, the claim nonetheless fails. Joint users have authority to consent to search. *See Frazier v. Cupp*, 394 U.S. 731, 740 (1969). Plaintiffs assert that McClintock had been using the computer to create .jpg files of Addleman's drawings. (Dkt. No. 118; Dkt. No. 100, Exh. ZTE-064.) Thus, if the computer was owned by Addleman but in McClintock's possession, McClintock's consent to the search was binding on Addleman.[2] Plaintiffs fail to raise a genuine issue of material fact as to any Fourth Amendment violation associated with the search and seizure of the computer.

      6.      DOC violated Plaintiffs' Fourth Amendment rights by transferring the computer to King County, and King County violated Plaintiffs' Fourth Amendment rights by receiving the computer. (Dkt. No. 1 at 2-5.)

Once evidence has been validly seized, it is not a violation of the Fourth Amendment for one police agency to transfer legally seized evidence to another police agency. *United States v. Hearst*, 563 F.2d 1331, 1347 (9th Cir. 1977) ("We decline to mutate the prohibitions of the Fourth Amendment, which deal with government-instigated searches and seizures, into a code of regulations governing interagency transfer of evidence legitimately in government control."). Because the original search and seizure were valid under the Fourth Amendment, the transfer of the computer cannot, as a matter of law, be a Fourth Amendment violation.

      7.      King County Defendants violated Plaintiffs' Fourth Amendment rights by searching the computer. (Dkt. No. 1 at 2-3.)

Plaintiffs offer no evidence in support of their contention that King County searched the computer, an allegation it denies. However, even assuming that Plaintiffs are correct that a search took place, because the underlying seizure of the computer and transfer to King County were valid, the Court can discern no basis for finding a Fourth Amendment violation upon King County's further search. This claim must also be dismissed.

---

[2] This same argument applies to any paper copies of the drawings and to any business records.

ORDER — 11

    8.    DOC or King County Defendants violated Plaintiffs' Fifth or Fourteenth Amendment due process rights by erasing the computer and by failing to keep proper evidence records. (Dkt. No. 1 at 2-5.)

Even assuming that Plaintiffs are correct that the CCOs or King County erased the computer's hard drive while searching it, negligent damage or destruction of property does not violate the Fifth or Fourteenth Amendment. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Even where the deprivation is not merely negligent, due process is not violated as long as the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981). Washington has a tort claims process with which Plaintiffs have demonstrated familiarity. (Dkt. No. 100, Exhs. ZTE-040, DOC-019, ZTE-101, XOX-037, ANJ-015, XOX-036, & DOC-019(b).) Plaintiffs fail to raise a genuine issue of material fact as to a due process violation arising from the alleged erasure of the computer.

For the same reason, even taken as true, Plaintiffs' complaint about Defendants' failure to keep evidence records also fails to state a claim. At most, failing to keep an evidence record for a single item would amount to a negligent failure to care for legally seized evidence. Like destruction or damage to legally seized evidence, such an omission is not a constitutional violation.

    9.    DOC and King County Defendants violated Plaintiffs' First Amendment rights by seizing "First Amendment materials." (Dkt. No. 1 at 3, 5.)

When the Government seizes written material or artistic production for a reason other than the content of the material, the seizure does not infringe the First Amendment. *United States v. Stelten*, 867 F.2d 446, 450 (8th Cir. 1989), *cert. denied*, *Gorman v. United States*, 493 U.S. 828 (1989). Here, the computer and other materials were seized pursuant to a valid exercise of the police power in supervising McClintock's parole. Plaintiffs allege that Defendants seized materials in order to stop publication (Dkt. No. 1 at 5), and claim during the search, the CCOs "stated they were 'alarmed'" by one drawing depicting a stabbing. (Dkt. No. 1 at 10.) Plaintiffs introduce no

ORDER — 12

evidence, however, that the search and seizure were motivated by the content of Plaintiffs' book or a desire to suppress publication. As a result, their claim cannot survive summary judgment.

10. King County Defendants violated Plaintiffs' unspecified rights by having a policy of "holding and hiding" the computer (Dkt. No. 1 at 3), and by having a policy of erasing the computer's drive. (Dkt. No. 1 at 2-3.)

Plaintiffs fail to raise a genuine issue of material fact as to these assertions. Plaintiffs introduce no evidence beyond their own conjecture that King County had a policy of "holding and hiding" the computer. As to the alleged policy of erasing computer hard drives, Plaintiffs state that a letter from the state's Office of Risk Management (ORM) told them there was such a policy. (Dkt. No. 40 at 1.) Plaintiffs submit multiple letters from the Office of Risk Management, but none of these letters lends support to their assertion. (Dkt. No.100, Exhs. ZTE-040, DOC-019, ZTE-101, XOX-037, ANJ-015, XOX-036, & DOC-019(b).)

11. King County Detective Andrea Alexander violated Plaintiffs' unspecified rights by hiding the computer from Plaintiffs, by hiding her identity from Plaintiffs, and by failing to return phone calls. (Dkt. No. 1 at 3.)

Even taking Plaintiffs' unsupported allegations as true, Plaintiffs do not specify a constitutional basis for the relief they seek. The Court can discern none. Accordingly, these claims fail as a matter of law.

12. King County violated Addleman's Fifth Amendment due process rights by returning the computer to McClintock and by not sending notice of seizure to Addleman's address in Bremerton. (Dkt. No. 122 at 3-4.)

Late in his filings, Addleman claims that his Fifth Amendment due process rights were violated when King County failed to send notice to his Bremerton address, and when the computer was returned to McClintock. (Dkt. No. 122 at 3-4.) Setting aside for the moment the fact that this late claim was not properly pled and failed to give Defendants adequate notice, Plaintiffs also fail to

state a claim for a due process violation because Washington's tort claims law gives Addleman an adequate post-deprivation remedy. *Parratt*, 451 U.S. at 543-44.

        13.      King County Defendants violated Plaintiffs' rights by failing to notify McClintock that King County had the computer. (Dkt. No. 1 at 3.)

Plaintiffs do not offer enough evidence for a jury to reasonably find for Plaintiffs on this claim. Detective Alexander's declaration states that she left telephone messages for McClintock to pick up his computer. (Dkt. No. 106.) Plaintiffs assert in their pleadings that they were not notified that King County had the computer until October 2003. (Dkt. No. 1 at 14.) However, Plaintiffs also submit a letter, apparently from McClintock to Addleman, dated June 8, 2003, in which McClintock states that he is not contacting King County about the computer because he fears it had material on it that violated his parole. (Dkt. 102, Exh. ZTE 059.) While a District Court will not generally weigh the evidence at summary judgment, where the plaintiff relies exclusively on his own contradictory testimony, the contradictions may be taken into account when considering whether a jury could reasonably find for the plaintiff. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). Plaintiffs' contradictory submissions fail to set forth facts sufficient to show that there is a genuine issue for trial, and summary judgment must be granted for Defendants on this claim.

## IV.    MOTION TO CONTINUE

Plaintiffs have filed a Motion to Continue (Dkt. No. 115) in which they argue that a continuation of thirty days is necessary for them to find and obtain evidence from Bass. Plaintiffs subsequently filed a declaration by Bass, so it appears that the motion to continue is moot. Moreover, since the declaration sought from Bass concerned ownership of the computer, a factor the Court found above to be irrelevant, the evidence Plaintiffs seek to obtain would not change the above analysis. Accordingly, Plaintiffs' Motion to Continue is STRICKEN as moot.

//

ORDER — 14

## V. CONCLUSION

The Court hereby ORDERS:

(1) Defendants' Motions for Summary Judgment (Dkt. No. 105 and 108) are GRANTED;

(2) Plaintiffs' Motion to Continue (Dkt. No. 115) is STRICKEN; and

(3) Plaintiffs' complaint (Dkt. No. 1), and amended complaint (Dkt. No. 2) are DISMISSED, with prejudice, as to all claims.

SO ORDERED this 14th day of May, 2007.

*[signature]*

THE HONORABLE JOHN C. COUGHENOUR
UNITED STATES DISTRICT JUDGE

ORDER — 15